STATE OF CONNECTICUT *v.* FRANCISCO TAVERAS
(AC 16729)

O'Connell, C. J., and Foti and Dupont, Js.

---

[13] See footnote 6.

Argued May 27—officially released August 4, 1998

*David M. Shein*, with whom, on the brief, was *Frank Edward Babycos*, for the appellant (defendant).

*Eileen McCarthy Geel*, deputy assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Margaret E. Kelley*, assistant state's attorney, for the appellee (state).

*Opinion*

DUPONT, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of assault in the third degree in violation of General Statutes § 53a-61 (a) (1).[1] The defendant claims that the trial court

---

[1] General Statute § 53a-61 provides in relevant part: "Assault in the third degree: Class A misdemeanor. (a) A person is guilty of assault in the third

improperly (1) denied him a fair trial because the investigating officer allegedly gave his solicited opinion that the defendant was guilty, the state's attorney reiterated the officer's opinion and the trial court refused to give the jury a curative instruction, (2) excluded from evidence the jacket that the defendant wore at the time of the incident and (3) denied the defendant's request for a mistrial based on the statements made by a state's witness, regarding prior misconduct of the defendant, in violation of the court's order precluding such comments. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The victim, Gloria Taveras, is the defendant's former wife and the mother of their three children. The victim lived with her mother and the three children in the former marital home. By the terms of the Taveras' divorce agreement, the victim had physical custody of the children, and the defendant had unsupervised visitation every other week from 9 a.m. on Saturday to 6 p.m. on Sunday. By mutual agreement, however, the defendant often began his visitation with the children on Friday evenings.

On Friday, September 15, 1995, the defendant and the victim spoke by telephone and argued over the defendant's visit with the children that weekend. The defendant did not come to pick up his children on Friday, September 15, or on Saturday, September 16. On Sunday, September 17, shortly after the victim arrived home from work, the defendant arrived at her house. After the defendant spoke with one of his children, the victim came to the door and asked the defendant why he was there. An argument ensued between the defendant and the victim. When the victim would not allow the defendant to enter her home, he grabbed her by the

degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person . . . ."

hair and attempted to pull her outside. The defendant grabbed her by the arm, leaving scratches and bruises on her upper left arm. At one point during the altercation, the victim tore the defendant's jacket.

At the time of the altercation, the victim's mother was at home in her basement apartment. The victim's sister, Mildred Bauza, was visiting her mother, and Milton Quiles, an acquaintance of the family, was also in the basement apartment repairing the plumbing. Upon hearing the commotion at the front door, Bauza and Quiles came upstairs. Both Bauza and Quiles testified that when they arrived upstairs the defendant was trying to pull the victim out of the house while the victim resisted. Quiles intervened and was able to separate the victim and the defendant. The defendant then went to his car and telephoned the police to report that he had been attacked by the victim. Bauza also called the police to report the incident.

Officer Richard Golas of the Bridgeport police department arrived within ten to fifteen minutes. Golas testified that when he arrived at the victim's house he first spoke with the defendant who was outside of the house. Golas further testified that the defendant told him that he and his former wife had argued over his custody rights, and that she had punched him and ripped his jacket. Golas observed that the defendant's jacket was ripped, but could not testify as to the extent of the damage. Golas also testified that he could not observe any injuries on the defendant.

Golas next went into the house to speak to the victim and the two witnesses. Golas observed ambulance personnel tending to the victim, who was six months pregnant and experiencing labor pains. Golas also observed that the victim looked upset, had scratches and bruises, and her hair was disheveled. Golas then interviewed Bauza and Quiles, the two witnesses to the incident,

and interviewed the defendant again regarding what had transpired. After speaking with all of the parties present and observing the physical conditions of both the defendant and the victim, Golas surmised that the defendant became angry with the victim and "tried to take her out, pulling her physically out of her house," and concluded that there was probable cause to arrest the defendant for third degree assault.

I

The defendant first claims that his constitutional right to due process, as guaranteed by the fifth and fourteenth amendments to the United States constitution, and article first, § 8, of the Connecticut constitution, was violated by the prejudicial testimony of the investigating officer, Golas. The defendant argues that Golas was permitted to give his expert legal opinion on the ultimate issue of the defendant's guilt and that Golas' testimony was improperly emphasized by the prosecution. He further claims that the trial court should have given a curative instruction to the jury.

A

For the first time on appeal, the defendant objects to a portion of Golas' testimony in which the officer purportedly gave his opinion on the ultimate issue of the defendant's guilt or innocence. The portion of Golas' testimony to which the defendant now objects is as follows:

"Q. Okay, Now this is your normal course of your investigation when you arrive at a domestic call? Do you interview the parties?

"A. Sure, yes.

"Q. And then what do you do after you interview the parties? What do you do with the information you've received?

"A. Well, you weigh the information. I saw the injury on the victim . . . and I didn't see any injury on the defendant, so being a domestic violence call in the state of Connecticut, if there's any kind of an injury or an assault, you have to determine if there's going to be an arrest made.[2]

"Q. Okay.

"A. Weighing my options, I did decide to arrest the defendant for assault third, domestic violence.

"Q. Now, aside from this particular case, is it your procedure when you go to a call like this, that sometimes you may arrest more than one party?

"A. Yes, depending on the circumstances, you might arrest both parties, you might arrest whoever's at fault, whoever's in the wrong.

"Q. Okay. And you made a determination that day—

"A. Correct, that the defendant was at fault, from weighing my information I was given, yes."

Because the defendant failed to object to Golas' testimony at trial, we must determine whether review of this issue is warranted under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). In *Golding*, our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fun-

---

[2] Golas was apparently referring to General Statutes § 46b-38b (a), which provides in relevant part: "Whenever a peace officer determines upon speedy information that a family violence crime . . . has been committed . . . he shall arrest the person or persons suspected of its commission and charge such person or persons with the appropriate crime. The decision to arrest and charge shall not (1) be dependent on the specific consent of the victim, (2) consider the relationship of the parties or (3) be based solely on a request by the victim."

damental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id., 239–40. " 'The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review.' *State* v. *Newton*, 8 Conn. App. 528, 531, 513 A.2d 1261 (1986)." *State* v. *Shinn*, 47 Conn. App. 401, 409, 704 A.2d 816 (1997), cert. denied, 244 Conn. 913, 914, 713 A.2d 832, 833 (1998).

"The improper admission of opinion testimony that answers a question that a jury should have resolved for itself is not of constitutional significance and is a type of evidentiary error. *State* v. *Vilalastra*, [207 Conn. 35, 46, 540 A.2d 42 (1988)]." *State* v. *Wright*, 47 Conn. App. 559, 563, 707 A.2d 295 (1997), cert. denied, 244 Conn. 917, 714 A.2d 8 (1998). Because the defendant's claim regarding Golas' testimony is not of constitutional magnitude, we cannot afford it *Golding* review.

We next consider whether this issue is entitled to plain error review.[3] "Generally, where a claimed error of a nonconstitutional nature is not brought to the attention of the trial court, appellate review of that claim is available only if it constitutes plain error. . . . To prevail under the plain error doctrine, the defendant must demonstrate that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice. . . . This doctrine is not

---

[3] Practice Book (1998 Rev.) § 60-5, formerly § 4061, provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

The state addressed the issue of plain error review in its brief, and the issue was raised during oral argument.

implicated and review of the claimed error is not undertaken unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Furthermore, even if the error is so apparent and review is afforded, the defendant cannot prevail on the basis of an error that lacks constitutional dimension unless he demonstrates that it likely affected the result of the trial." (Internal quotation marks omitted.) *State* v. *Connelly*, 46 Conn. App. 486, 511, 700 A.2d 694 (1997), cert. denied, 244 Conn. 907, 908, 713 A.2d 829 (1998); see also *Kolich* v. *Shugrue*, 198 Conn. 322, 326, 502 A.2d 918 (1986).

Plain error review is not warranted here. In this case, Golas testified not as an expert witness, but instead as a fact witness with firsthand knowledge of the incident in question. Furthermore, Golas did not in fact testify as to the ultimate issue of the defendant's guilt or innocence. Instead, he testified as to his personal observations at the scene, his method of investigation, his statutory obligations in domestic cases and the fact that it was his ultimate conclusion that there was sufficient evidence to determine that the defendant was "at fault" in the incident and was the proper party to be *arrested*. Golas did not testify that in his opinion, the defendant was guilty of third degree assault. We conclude that it was not improper for the trial court to admit Golas' testimony.

## B

The defendant next claims that the prosecutor's closing arguments, permitted over the defendant's objection, improperly emphasized Golas' testimony. The defendant claims that he was prejudiced by the prosecutor's impropriety in the following respects: (1) the state asked the jury to consider matters that it should not have considered; (2) the prosecutor improperly bolstered Golas' testimony; (3) the prosecutor expressed her personal opinion of Golas' credibility; and (4) the

prosecutor improperly implied that the jury should reach the same conclusions as Golas.

The trial court has wide discretion in ruling on evidentiary matters, and its rulings will be reversed only if there has been a clear abuse of discretion or an injustice has been done. *State* v. *Zollo*, 36 Conn. App. 718, 723, 654 A.2d 359, cert. denied, 234 Conn. 906, 660 A.2d 859 (1995). "[C]ounsel may comment upon facts properly in evidence and upon reasonable inferences drawn therefrom." *State* v. *Kinsey*, 173 Conn. 344, 348, 377 A.2d 1095 (1977). Since we have determined that Golas' testimony was properly admitted by the trial court, the prosecutor's closing arguments will not be deemed improper unless they distorted or misstated Golas' testimony in some way.[4]

---

[4] The prosecutor's full closing argument regarding Golas' testimony is as follows: "I'd also like to touch a little bit on the testimony by Officer Golas. He was the officer that got the call. He indicated it came over the dispatch as a domestic call with injuries. He arrived on the scene. He immediately— the defendant was there, and as testimony indicates from, I believe Mildred Bauza and the defendant, the defendant had called the police. And, the police officer testified when he arrived at the scene, he immediately—he went over to the defendant . . . and spoke to him. After speaking to the defendant, Officer Golas then spoke to the other parties. He spoke to the victim, Gloria Taveras. He spoke about what he observed. He spoke that she was very upset, her hair was messed up, he found a hair clip outside the doorway outside of the house, not inside, that she seemed very upset and that he also observed scrapes on her arm. Officer Golas, after talking to the victim, also talked to Mildred Bauza, he also talked to Milton Quiles. And, then in an effort to thoroughly investigate, he went back to the defendant. He talked to the defendant a second time. I think that's very significant, and I think you will find it's very significant because, as the officer testified, many times in domestic violence cases [objection asserted by defense counsel and overruled by the court] he testified, when he goes out on domestic violence calls, he has to make a determination, he interviews the parties. Here he certainly interviewed both sides to the argument. He interviewed the two independent witnesses. He—I believe that what you will recall that what Officer Golas said, he did not see the defendant as the victim. He looked—he saw that the defendant had a torn jacket, but he observed the scrapes on the victim, he knew that she was pregnant, six months pregnant. He testified he observed some rips on the defendant's jacket. He did not observe any injuries to the defendant's wrists. He did not observe any blood

The prosecutor in this case merely argued to the jury facts that were properly admitted into evidence. She restated Golas' testimony with respect to his investigation and the facts that he concluded supported the defendant's arrest. The prosecutor did not argue that Golas had determined that the defendant was guilty, nor did she indicate that Golas' testimony should be believed by the jury. Instead, the prosecutor's closing arguments accurately reflected Golas' testimony, which testimony was properly admitted into evidence by the trial court and, therefore, the trial court properly overruled the defendant's objection.

## C

Finally, since we conclude that Golas' testimony was properly admitted by the trial court and that the prosecutor properly commented on admissible evidence, the defendant's claim that the trial court improperly refused to deliver a curative instruction is to no avail. The trial court has great discretion in deciding whether to give a curative instruction. *State* v. *Pouncey*, 241 Conn. 802, 814–15, 699 A.2d 901 (1997). The burden is on the defendant to prove that the trial court's refusal to deliver a curative instruction so far exceeded the boundaries of the court's discretion that he was denied a fair trial. See *State* v. *Richardson*, 214 Conn. 752, 759–60, 574 A.2d 182 (1990).

In this case, it is evident that the trial court evaluated the circumstances of the case, determined that the prosecutor's closing remarks were appropriate comment on the evidence and were not prejudicial and, accordingly, determined that a curative instruction was not warranted. We agree with that conclusion.

on the defendant's wrists, as the defendant testified to. Officer Golas testified that in assessing this and making a determination, he talked to all of the parties. He did his investigation, and based upon his investigation he made a determination, and that determination was that the defendant was the party to be *arrested* for assault in the third degree." (Emphasis added.)

## II

The defendant next claims that the trial court improperly excluded from evidence the jacket that he wore at the time of the incident. Additional facts are necessary to the resolution of this claim. The defendant testified that on the day of the incident in question, he was wearing a jacket and that during a heated argument the victim tore the jacket so that "the whole inside of the jacket, which has a lining, and the cloth itself, was ripped and torn completely." Golas and Bauza also testified that the defendant's jacket was torn during the argument, although neither testified as to the extent of the tear. The victim denied that she ripped the defendant's jacket. The defendant then testified that the lining of the jacket had been repaired by a tailor since the incident, but that the mending on the jacket would show where the damage had been. The defendant moved to admit the jacket into evidence to show the extent of the damage made by the victim and to refute the victim's testimony that she did not tear the jacket. The prosecution objected to the admission of the jacket, arguing that the repaired jacket was no longer a fair and accurate representation of the garment at the time of the incident and, further, that there was a problem with the chain of custody because the jacket had been out of the defendant's possession while it was being repaired. The court ruled that the jacket was inadmissible because it had undergone material alterations, was substantially changed, and was no longer a fair and accurate representation of the condition of the jacket at the time of the incident. We agree.

"When proffered evidence is challenged on the ground of material alteration, the trial court must satisfy itself in reasonable probability that the substance has not been changed in important respects. The trial court, in making its determination, must consider the nature

of the article, the circumstances surrounding its preservation and custody and the likelihood of intermeddlers tampering with it. In the absence of a clear abuse of discretion the ruling of the trial court [considering] the evidence must stand." *State* v. *Asherman*, 193 Conn. 695, 722, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985).

Given that the jacket in this case was being offered to show the extent of the tears made in the material, the trial court properly concluded that the repair of the jacket constituted a substantial material alteration and that the jacket, therefore, no longer accurately represented what it purported to show. Further, the exclusion of the jacket did not prejudice the defendant because he was able to present evidence that the jacket had been ripped in the incident through the testimony of Golas and Bauza. In light of this evidence and the other factors involved, the trial court did not abuse its discretion in refusing to admit the repaired jacket.

### III

The defendant finally claims that the trial court improperly denied his request for a mistrial based on the statements made by the state's witness regarding prior misconduct of the defendant in violation of the court's order precluding such comments. Prior to trial, the defendant filed a motion in limine requesting that the court enter an order prohibiting police officers who testify for the state from mentioning that the defendant was known to them from his prior arrests or convictions. The court ordered "that no questions about prior arrests are to be asked by the state, and the witnesses and the officers are to be instructed not to volunteer such information."

The defendant specifically cites four examples where he claims that the court's pretrial order was violated by the victim, who testified for the state. In the first

instance, after the victim testified on direct examination, without objection, that her marriage to the defendant was "not that great," the state asked her, "How would you describe it?" The defendant objected to this inquiry and the question was withdrawn.

The next two instances that the defendant cites as violative of the court's order involved responses by the victim to the defendant's own cross-examination of her. During cross-examination, the defendant asked the victim whether, on the day of the incident, there was a protective order in place. In her response, which was subsequently stricken, the victim stated that protective orders had been entered on prior unrelated occasions. Later during cross-examination, in response to the question of whether her children engaged in visitation with any third party, the victim stated that "his family tries, the only time they really come up is when he ends up arrested for any other thing."

The fourth instance cited by the defendant occurred on the state's redirect examination of the victim. On redirect, the state asked the victim, "Before when you were testifying, describing the incident that day, the pushing and shoving that was going on and [the defense attorney] asked you, isn't it true that he had done that before, that the defendant had done that before, what did you mean when you said yes, he had done that before?" In response, the victim stated, "He had come into the house before, broken into the back door and came into the house, he destroyed my car, he destroyed everything inside the house, wanting to beat me up, threatened me with a gun, things like that."

The defendant objected to the victim's response on the ground of relevancy and, after removing the jury and hearing argument from counsel, the trial court sustained the objection and ordered that the victim's response be stricken.

After this ruling, the defendant moved for a mistrial arguing that the jury was prejudiced beyond any curative instruction. When the jury returned to the courtroom, the trial court issued the following instruction: "Thank you. You may be seated. Ladies and gentlemen, I am sustaining the objection to the last question and, therefore, any answer that was given to the question 'had he done that before' and the responses to that question, are to be—are stricken. They're stricken from the record, and they're not to be considered by you in your deliberations as far as the evidence in this case. That is not evidence and it is not part of your consideration. Thank you."

" 'While the remedy of mistrial is permitted under the rules of practice it is not favored. [It] should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial . . . and the whole proceedings are vitiated. . . . If curative action can obviate the prejudice, the drastic remedy of mistrial should be avoided. . . . *State* v. *Wooten*, [227 Conn. 677, 693–94, 631 A.2d 271 (1993]). On appeal, we hesitate to disturb a decision not to declare a mistrial. The trial judge is the arbiter of the many circumstances which may arise during the trial in which his function is to assure a fair and just outcome. *State* v. *Rodriguez*, 210 Conn. 315, 333, 554 A.2d 1080 (1989); *State* v. *Bausman*, 162 Conn. 308, 312, 294 A.2d 312 (1972).' *State* v. *Bowman*, 46 Conn. App. 131, 136–37, 698 A.2d 908 (1997)." *State* v. *Henderson*, 47 Conn. App. 542, 557, 706 A.2d 480, cert. denied, 244 Conn. 908, 713 A.2d 829 (1998). "On appeal, the defendant bears the burden of establishing that there was irreparable prejudice to the defendant's case such that it denied him a fair trial." *State* v. *Rasmussen*, 225 Conn. 55, 87, 621 A.2d 728 (1993).

"Due process seeks to assure a defendant a fair trial, not a perfect one." *State* v. *Kurvin*, 186 Conn. 555, 565, 442 A.2d 1327 (1982). Here, while the testimony of the victim may have violated the court's pretrial order, the defendant has failed to establish that given the court's cautionary instruction to the jury, and when taken in the context of the entire trial, he was prejudiced by the violation of the court order. We therefore conclude that the trial court did not abuse its discretion in denying the defendant's motion for a mistrial.

The judgment is affirmed.

In this opinion the other judges concurred.