STATE OF CONNECTICUT *v.* DAVID OBERDICK
(AC 21885)

Foti, Mihalakos and Healey, Js.

58

Argued October 17—officially released December 10, 2002

*Ronald F. DeMatteo*, special public defender, for the appellant (defendant).

*Thomas M. DeLillo,* special deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Elizabeth Bodine,* assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, David Oberdick, appeals from the judgment of conviction, rendered after a jury trial, of one count of conspiracy to commit burglary in the second degree in violation of General Statutes §§ 53a-48 (a) and 53a-102 (a) and one count of burglary in the third degree in violation of General Statutes § 53a-103 (a).[1] On appeal, the defendant claims that the evidence did not support the conviction for those counts. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At all relevant times, Hector Pouliet rented two separate rooms on the second floor of an apartment building in New Haven. Pouliet used one of the rooms as his living quarters and used the other to store some of his possessions. Those possessions included several bottles of liquor, some of which contained vodka. The defendant and Rose Daniels[2] were acquaintances of Pouliet and occasionally visited with him at his resi-

---

[1] The state originally charged the defendant with two counts of burglary in the third degree. The jury convicted the defendant on one of those counts, which is a subject of this appeal. As to the other count, the jury found the defendant guilty of the lesser included offense of criminal trespass in the second degree in violation of General Statutes § 53a-108. On appeal, the defendant does not challenge his conviction as to that lesser included offense.

The record further reflects that the jury convicted the defendant of conspiracy to commit burglary in the third degree in violation of General Statutes §§ 53a-48 (a) and 53a-103 (a), as the state charged in its substitute information. At the defendant's sentencing, the court rendered a judgment of acquittal as to that count.

[2] In their briefs, the parties refer to Daniels interchangeably as Rose Wilson or Rose Daniels-Wilson. Daniels testified at trial that she wanted to be addressed as Daniels, and we will do so throughout this opinion.

dence. At trial, the manager of the apartment building testified that Daniels, whom he described as often being intoxicated, had become a "nuisance." For that reason, the building manager informed the defendant that Daniels was not permitted in the building.

The defendant and Daniels had consumed alcoholic beverages in each other's company and did so on September 18, 2000. The defendant and Daniels began drinking, along with another acquaintance, that afternoon. At or around 10:30 that evening, the defendant and Daniels arrived at the front of Pouliet's apartment building. Several weeks before, Pouliet had informed Daniels that he was going to be vacationing in New Hampshire and that he would not be in his apartment until approximately September 19, 2000. Pouliet did not give either the defendant or Daniels permission to enter his premises while he was away.[3] By 10:30 p.m. on September 18, 2000, the defendant and Daniels had consumed all of the liquor that they possessed, but they both knew that Pouliet kept a stash of liquor in one of his rented rooms.

Once at the apartment building, Daniels stood behind a pole near the sidewalk and kept a lookout while the defendant kicked the front door open. After doing so, the defendant entered the building through the broken door. Daniels followed the defendant into the building, and the two made their way to Pouliet's storage room. Either the defendant or Daniels also damaged an inte-

---

[3] During direct examination, Pouliet testified that he did not give either the defendant or Daniels permission to enter his apartment while he was away. During cross-examination, however, Pouliet testified that he had asked Daniels to look after his apartment while he was away, but that he had forgotten to give her the keys with which to gain entry to the apartment. Because we are bound to evaluate that conflicting testimony in the light most favorable to sustaining the verdict, we assume that the jury discredited Pouliet's latter version of events. The jury "is entitled to credit some portions of the testimony of a witness and to discredit other portions." *State* v. *Reyes*, 19 Conn. App. 179, 191, 562 A.2d 27 (1989), cert. denied, 213 Conn. 812, 568 A.2d 796 (1990).

rior doorway, thereby gaining access to the second floor. The defendant took a bottle of Pouliet's vodka from the storage room before the police arrived and apprehended him and Daniels. Additional facts will be set forth as they become relevant in the context of the defendant's claims.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Morgan*, 70 Conn. App. 255, 282, 797 A.2d 616, cert. denied, 261 Conn. 919, 806 A.2d 1056 (2002). We now will apply that standard of review to each of the defendant's claims.[4]

I

The defendant first claims that the evidence did not support his conviction for conspiracy to commit burglary in the second degree in violation of §§ 53a-48 (a)[5] and 53a-102 (a).[6] We disagree.

---

[4] We note that the defendant sought a judgment of acquittal at the close of the state's case-in-chief; see Practice Book § 42-40; thereby preserving the issues he raises on appeal for our review. The defendant argues on appeal that the court improperly denied his motion. Because we conclude that the evidence was sufficient to sustain the conviction, we likewise conclude that the court properly denied the defendant's motion.

[5] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[6] General Statutes § 53a-102 (a) provides: "A person is guilty of burglary in the second degree when he enters or remains unlawfully in a dwelling at night with intent to commit a crime therein."

As an initial matter, we set forth the essential elements of the crime of which the defendant stands convicted. To convict the defendant for the crime of conspiracy to commit burglary in the second degree, the state must prove that a conspiracy existed. Under § 53a-48 (a), the state must prove (1) that the defendant intended that conduct constituting a crime be performed, (2) that the defendant agreed with one or more persons to engage in or to cause the performance of such conduct and (3) that any one of them committed an overt act in furtherance of such conspiracy. The state must further prove that the object of the conspiracy was to commit the crime of burglary in the second degree. Under § 53a-102 (a), the state must prove (1) that the defendant entered or remained unlawfully in a dwelling, (2) that this occurred at night and (3) that the defendant intended to commit a crime therein. The state alleged that the defendant intended to commit the crime of larceny as defined in General Statutes § 53a-119.[7]

The defendant argues that the state failed to prove beyond a reasonable doubt either (1) that he intended that conduct constituting a crime be performed or (2) that he agreed with one or more persons to engage in or cause the performance of such conduct. The defendant argues that "no direct evidence was produced to demonstrate that [he] ever intended to commit a crime when he kicked in the door" leading to Pouliet's building. The defendant also relies on Daniels' testimony at trial. Daniels testified that she was going to Pouliet's apartment that evening to retrieve her keys and that she had Pouliet's permission to do so. Daniels also testified that she so informed the defendant. Daniels further testified that she gave the defendant a bottle of vodka that

---

[7] General Statutes § 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

belonged to her on the night of the incident because the defendant had a pocket in which to carry the bottle. Daniels testified that Pouliet had been keeping that bottle of vodka for her and that he had told her to come by and get it whenever she so desired. The defendant posits that this explanation of events precluded a finding by the jury that he intended to commit any crime on September 18, 2000. Essentially, the defendant urges us to accept as true his representation that "his intentions were innocent."

To demonstrate the existence of a conspiracy between one or more parties, "[t]he existence of a formal agreement between the parties need not be proved. It is sufficient to show that they are knowingly engaged in a mutual plan to do a forbidden act. . . . Because of the secret nature of a conspiracy, a conviction is usually based on circumstantial evidence. . . . The state need not prove that the defendant and a coconspirator shook hands, whispered in each other's ear, signed papers, or used any magic words such as we have an agreement." (Internal quotation marks omitted.) *State* v. *Gonzalez*, 69 Conn. App. 649, 653, 796 A.2d 1225, cert. denied, 260 Conn. 937, 802 A.2d 91 (2002).

With regard to the essential element of intent, we recognize that conspiracy is a specific intent crime. Intent is divided into two parts: "(1) the intent to agree to conspire; and (2) the intent to commit the offense that is the object of the conspiracy." (Internal quotation marks omitted.) *State* v. *Kenney*, 53 Conn. App. 305, 312, 730 A.2d 119, cert. denied, 249 Conn. 930, 733 A.2d 851 (1999). "Intent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom. . . . In a conspiracy prosecution, when determining both a defendant's

specific intent to agree and his specific intent that the criminal acts be performed, the jury may rely on reasonable inferences from facts in the evidence and may develop a chain of inferences, each link of which may depend for its validity on the validity of the prior link in the chain." (Internal quotation marks omitted.) Id.

Having reviewed the evidence, we conclude that ample evidence existed from which the jury could have found beyond a reasonable doubt (1) that the defendant intended to commit the crime of burglary in the second degree, which was the object of the conspiracy, and (2) that the defendant and Daniels had agreed to conspire to achieve that illegal end.

The evidence demonstrated that the defendant and Daniels knew Pouliet and knew that he stored bottles of liquor in one of his rented rooms. The evidence demonstrated that the defendant and Daniels were drinking during the day on September 18, 2000, and, by nightfall, had consumed all of their own liquor. Daniels testified that Pouliet had informed her that he would be away from his apartment and on vacation until, possibly, September 19, 2000. By around 10:30 p.m. on September 18, 2000, the defendant and Daniels had traveled from the Long Wharf area of New Haven, where they had been drinking during the day, to the area of the New Haven Green, to Pouliet's apartment.

At that time, Joshua Picard and an acquaintance were walking on the opposite side of the street from Pouliet's apartment building. Picard testified that he observed the defendant repeatedly kick at the front door, then look up and down the street before resuming the attempt to gain entry forcibly to the dwelling. As the defendant did so, Daniels stood behind a pole, near the front entrance of the building and kept a lookout, as well. Picard also testified that he observed the defen-

dant and Daniels enter the dwelling after the defendant had kicked the door off of its hinges.

The evidence further demonstrated that Picard immediately reported the incident to New Haven police Officers Brian Pizsak and Paul Bicki, who were patrolling the area. Pizsak and Bicki found evidence of forced entry to the dwelling consistent with Picard's observations. Officers Danielle Rodriguez and Jon Haddad arrived shortly thereafter. At trial, Bicki testified that he and other officers entered the building and that one of the officers shouted for any intruders to "come out." Bicki testified that shortly thereafter, he discovered the defendant, in an intoxicated state, walking from the area of Pouliet's storage room in the hallway on the second floor, where officers apprehended him. Haddad found a full bottle of vodka in the defendant's pocket, and other officers found Daniels nearby in the storage room where Pouliet kept his liquor.

We conclude that the evidence provided ample support for the jury's finding that the defendant intended to enter or to remain in Pouliet's apartment building to commit the crime of larceny therein. Further, the state produced ample circumstantial evidence that the defendant had agreed with Daniels to engage in or to cause conduct in furtherance of that crime. The evidence demonstrated that the defendant had kicked the door open while Daniels kept a lookout. Upon gaining illegal entry into the building, the two conspirators proceeded to either deprive Pouliet of all or some of his liquor or to appropriate the use of such property to themselves. The cumulative effect of the actions of the defendant and Daniels, actions that certainly reflect a common scheme, provided circumstantial evidence from which the jury reasonably could infer that a conspiracy existed and that the defendant possessed the requisite mental state for the commission of larceny.

The defendant's portrayal of the events on the night of the incident contradicts the findings made by the jury. We reiterate that our task in reviewing the jury's findings is to "construe the evidence in the light most favorable to sustaining the verdict." (Internal quotation marks omitted.) *State* v. *Morgan*, supra, 70 Conn. App. 282. In the present case, the evidence adduced at trial and the reasonable inferences to be drawn therefrom supported the jury's findings and verdict.

## II

The defendant next claims that the evidence did not support his conviction for burglary in the third degree in violation of § 53a-103 (a).[8] We disagree.

To convict the defendant for the crime of burglary in the third degree, the state must prove (1) that the defendant entered or remained unlawfully in a building and (2) that he did so with the intent to commit a crime therein. In the present case, the state charged that the defendant had entered Pouliet's apartment building with the intent to commit larceny.

The defendant argues on appeal that the evidence did not support the jury's finding that he possessed the specific intent necessary for that crime, namely, the intent to commit a crime in the building. In support of his claim, the defendant again draws our attention to Daniels' testimony that she had a lawful reason to be in Pouliet's building on the evening of September 18, 2000. The defendant asserts that the evidence showed him to have been "merely accompanying" Daniels to the building while she obtained her keys therein. He further argues that he had no intention of committing any crime on that night and that the evidence could not support a finding to the contrary.

---

[8] General Statutes § 53a-103 (a) provides: "A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein."

We review the evidence adduced at trial, in the light most favorable to sustaining the jury's verdict, to determine whether, on the facts so construed and the inferences reasonably drawn therefrom, the jury could have concluded that the state proved the necessary element of intent beyond a reasonable doubt. As stated in part I, the jury had before it testimony concerning the defendant's conduct prior to and during the incident. That evidence demonstrated that as Daniels stood by and kept a lookout, the defendant kicked open the front door of Pouliet's apartment building. While he did so, he intermittently looked around to check if any passersby were observing him. The defendant did not have permission either to enter the building or to avail himself of Pouliet's belongings therein. Once he kicked the door open, the defendant and Daniels entered the building, forcibly gained entry through an interior door to the second floor and proceeded to Pouliet's storage room, wherein a stash of vodka was stored. When police officers arrived, they found the defendant with a full bottle of vodka in his pocket.

The jury was free to draw from that evidence of the defendant's conduct reasonable inferences concerning his intent. Construing that evidence in the light most favorable to sustaining the verdict, we conclude that the jury reasonably could have found beyond a reasonable doubt that the defendant had the requisite intent to commit burglary in the third degree.

The judgment is affirmed.

In this opinion the other judges concurred.