STATE OF CONNECTICUT *v.* JAMAAL COLTHERST
(AC 25175)

Schaller, Bishop and Hennessy, Js.

Argued October 28, 2004—officially released January 25, 2005

*Moira L. Buckley*, for the appellant (defendant).

*Bruce R. Lockwood*, assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Kevin J. Murphy*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Jamaal Coltherst, appeals from the judgment of conviction, rendered after a jury trial, of numerous crimes resulting in an effective sentence of eighty-five years incarceration.[1] On appeal,

---

[1] The defendant was convicted of kidnapping in the first degree with a firearm in violation of General Statutes § 53a-92a, burglary in the first degree in violation of General Statutes § 53a-101 (a) (1), burglary in the first degree in violation of § 53a-101 (a) (2), attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a, assault in the first degree in violation of General Statutes § 53a-59 (a) (1), assault in the first degree in violation of § 53a-59 (a) (2), robbery in the first degree in violation of General Statutes § 53a-134 (a) (1), robbery in the first degree in violation of § 53a-134 (a) (2), conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a) (2), conspiracy to commit robbery in the

the defendant claims that the court (1) improperly denied his motion for a mistrial, (2) improperly admitted into evidence testimony from his prior trial, (3) improperly instructed the jury as to an element of larceny and (4) violated the prohibition against double jeopardy by sentencing him on his conviction of six counts of conspiracy offenses. We agree with the defendant with respect to his fourth claim only and reverse in part the judgment of the trial court. We affirm all other aspects of the judgment.

The jury reasonably could have found the following facts. On October 19, 1999, the defendant, Carl Johnson and Rashad Smith were sitting in a stolen black Honda Accord[2] near 85 Wolcott Hill Road in Wethersfield. The trio had smoked marijuana. Sometime after darkness fell, the victim, Michael Clarke, returned to Camilleri and Clarke Associates, Inc., the insurance brokerage firm located there, of which he was an owner. He had left his motor vehicle, a black Lincoln Mark VIII valued at approximately $28,000,[3] in the firm's parking lot. After the victim had been in the building for some time, his dog began to bark, and so the victim went outside. After the victim left the building, he was accosted by the defendant and Johnson. The defendant wore a red

first degree in violation of §§ 53a-48 and 53a-134 (a) (1), conspiracy to commit kidnapping in the first degree with a firearm in violation of §§ 53a-48 and 53a-92a, conspiracy to commit burglary in the first degree in violation of §§ 53a-48 and 53a-101, conspiracy to commit assault in the first degree in violation of §§ 53a-48 and 53a-59 (a) (1), larceny in the first degree in violation of General Statutes § 53a-122 (a) (3) and conspiracy to commit larceny in the first degree in violation of §§ 53a-48 and 53a-122 (a) (3).

[2] The defendant and Johnson had stolen the car in East Hartford and, on October 15, 1999, after committing several additional crimes, Johnson shot and killed Kyle Holden. See State v. Coltherst, 263 Conn. 478, 483–88, 820 A.2d 1024 (2003). As a result of his participation in that criminal activity, the defendant was sentenced to a total effective term of life imprisonment without the possibility of release followed by seventy-one years imprisonment. Id., 487–88.

[3] The victim did not own the vehicle, but leased it instead.

sweatshirt or parka.[4] The victim was instructed to turn over the keys to his vehicle. One of the men pointed a gun at the victim, and told him to go back into the building and to his office.

In the office, while one of the men continued to point the gun at the victim, the other held the victim. The defendant and Johnson took the victim's laptop computer and credit card.[5] They threatened the victim and ordered him to provide the access code for the card so that they could use it to obtain cash.[6] Johnson took the computer while the defendant took the credit card. The defendant and Johnson stated that they were going to take the victim to the car, and after he protested and resisted, he was struck twice in the face with the gun. The victim was pushed outside, continued to struggle with the two men and broke away from them before being forced into the car. The victim started to flee and called out for help, but was soon tackled by Johnson. The victim then struggled with the defendant, who took out a .22 caliber Beretta and shot the victim in the head.[7] The defendant and Johnson fled the scene in the victim's Lincoln while Smith drove the Honda Accord.[8]

Oscar Rivera, a Wethersfield police officer, arrived at the scene after being notified of the assault. He found the victim lying on the ground in the parking lot, which

---

[4] The victim testified that the red jacket recovered from the defendant's home was consistent with the jacket worn by the man who had assaulted him.

[5] The defendant and Johnson sold the laptop computer at a pawn shop for approximately $200.

[6] The victim inadvertently gave the defendant and Johnson his credit card rather than his automatic teller machine bank card. As a result, the numeric access code provided to the defendant did not work.

[7] As a result of the assault, the victim spent a significant amount of time recovering from his injuries and undergoing rehabilitation. He continued to suffer from permanent weakness on the right side of his body.

[8] The defendant, Johnson and Smith abandoned their plan to take the victim's car to New York City and instead abandoned it in a parking lot in Hartford.

was otherwise empty. At that time, the victim was responsive, but had suffered visible injuries. Medical personal subsequently transferred the victim to Hartford Hospital for treatment. The victim was hospitalized for nine to ten days and then was transferred to a rehabilitation facility for an additional seven weeks of therapy.

Leslie Higgins, an employee of United Services Automobile Association, the company that issued the victim's credit card, testified that on the night of the shooting, there were several attempts at various automatic teller machines to obtain cash with the card taken by the defendant. The first three attempts were declined due to an incorrect access code, and the fourth failed as a result of an automatic lock out due to the previous incorrect access codes. Higgins further testified that the defendant's card was used on October 21, 1999, to make several purchases, totaling several hundred dollars, at various stores in Manchester. Eventually, a hold was placed on the account due to suspected fraudulent activity.

On October 24, 1999, Sergeant Robert Whitty of the Avon police department stopped a black Honda Accord carrying the defendant, Johnson, Smith and Damion Kelly. A search of that vehicle revealed the victim's credit card, credit card receipts that matched the victim's credit card, items purchased with the victim's credit card and a .22 caliber bullet that subsequently was determined to have been of the same caliber used in the shooting. Additionally, after searching the defendant's residence, the police recovered a pair of the defendant's boots that were stained with the victim's blood, a computer case containing the victim's business card and a red jacket.

The defendant subsequently was arrested, tried before the jury and convicted on all of the fifteen counts

with which he had been charged. This appeal followed. Additional facts will be set forth as necessary.

## I

The defendant first claims that the court improperly denied his motion for a mistrial. Specifically, he argues that one of the state's witnesses made reference to his prior misconduct despite an agreement between the parties to avoid using such testimony and that no curative instruction could have alleviated the resulting prejudice.

At the outset, we identify the appropriate standard of review. "While the remedy of a mistrial is permitted under the rules of practice, it is not favored. [A] mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial . . . and the whole proceedings are vitiated. . . . If curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided. . . . On appeal, we hesitate to disturb a decision not to declare a mistrial. The trial judge is the arbiter of the many circumstances which may arise during the trial in which his function is to assure a fair and just outcome. . . . The trial court is better positioned than we are to evaluate in the first instance whether a certain occurrence is prejudicial to the defendant and, if so, what remedy is necessary to cure that prejudice. . . . The decision whether to grant a mistrial is within the sound discretion of the trial court." (Internal quotation marks omitted.) *Label Systems Corp.* v. *Aghamohammadi*, 270 Conn. 291, 316–17, 852 A.2d 703 (2004); *State* v. *Taft*, 258 Conn. 412, 418, 781 A.2d 302 (2001). Put another way, "[o]n appeal, the defendant bears the burden of establishing that there was irreparable prejudice to the defendant's case such that it denied him a fair trial." (Internal quotation marks omitted.) *State* v. *Taveras*,

49 Conn. App. 639, 652, 716 A.2d 120, cert. denied, 247 Conn. 917, 722 A.2d 809 (1998).

The following additional facts are necessary for the resolution of the defendant's claim. Prior to the start of the trial, the defendant filed a motion in limine with respect to certain uncharged misconduct. Specifically, the defendant sought to prohibit reference to his involvement in a carjacking that had occurred in East Hartford and for which he had been convicted. Prior to the court's ruling, the prosecutor stated that he did not oppose the motion; furthermore, he did not intend to introduce any evidence relating to the East Hartford incident. He informed the court that all of the state's witnesses had been instructed to avoid discussing the East Hartford incident. The court noted that if the issue arose during the trial, the court was to be warned in advance and that it would make a ruling outside of the jury's presence.

During the second day of evidence, Detective Mark Miele of the Wethersfield police department testified that he had met the defendant on October 25, 1999. He interviewed the defendant regarding the crimes under-lying this appeal. After initially denying his involvement, the defendant subsequently admitted to being a partici-pant in the Wethersfield incident. Miele testified in rele-vant part that the defendant "stated that [he], another individual . . . Johnson, and a third individual . . . Smith, were riding around in a stolen Honda Accord that they had acquired from another individual in the town of East Hartford some days before, and that that night, they were going to look to carjack another indi-vidual and . . . take the car from that person if they could find a car that they liked."

Defense counsel immediately objected, and, outside of the presence of the jury, made an oral motion for a mistrial. The prosecutor apologized to the court, but

argued that Miele's comment did not deprive the defendant of a fair trial and, therefore, a mistrial was not warranted. He further stated that he did not object to the court's striking that portion of Miele's testimony or the court's issuing a limiting instruction to the jury. The court denied the defendant's motion in an oral ruling and allowed the defendant time during the luncheon recess to consider whether to request a limiting instruction. The defendant subsequently declined any limiting instruction.[9]

On appeal, the defendant argues that Miele's testimony making reference to the East Hartford incident resulted in prejudice that warranted a mistrial. Our review of the record, however, persuades us that Miele's statement did not deprive the defendant of a fair trial, thereby requiring the court to grant the motion for a mistrial. See State v. *Higgins*, 265 Conn. 35, 75, 826 A.2d 1126 (2003). Miele testified after the jury had heard from several witnesses. Smith, who testified before Miele, stated that he had been arrested in East Hartford with the defendant and Johnson. Furthermore, Miele, prior to his statement, informed the jury that he knew that the defendant was in the custody of the East Hartford police department on a matter unrelated to Miele's investigation of the Wethersfield incident. It is clear that the jury was aware that the defendant had been involved in some activity that resulted in the East Hartford police taking him into custody. We also note that Miele did not state that the victim in the East Hartford incident was injured during the criminal activity; instead, the jury merely learned that the defendant previously had been involved in a carjacking. We cannot conclude that this information alone deprived the defendant of a fair trial.

---

[9] Defense counsel stated: "I will just put on the record, I'm not going to ask for any correcting instruction in regard to the issue that we just were talking about before the break. I think it's probably just better left alone rather than call more attention to it."

We have declined to find an abuse of the trial court's discretion in cases in which a party failed to adhere to a ruling on a motion in limine or some misstatement was made in the presence of the jury. See, e.g., *State v. Vitale*, 76 Conn. App. 1, 10–14, 818 A.2d 134 (two prejudicial remarks concerning defendant's misconduct made during testimony before jury), cert. denied, 264 Conn. 906, 826 A.2d 178 (2003); *State v. Taveras*, supra, 49 Conn. App. 650–53 (four references made to defendant's uncharged misconduct during testimony before jury). In those cases, the court issued a limiting instruction and struck the testimony. "A reviewing court gives great weight to curative instructions in assessing error." (Internal quotation marks omitted.) *State v. Vitale*, supra, 13. In this case, however, the defendant was given two opportunities to have the court issue such an instruction, once immediately after Miele's statement and once following the luncheon recess prior to the continuation of Miele's testimony. At both times, the defendant refused the limiting instruction and the offer to strike the statement. "[M]ost important, the defendant declined a cautionary instruction on the matter. The trial court could have decided that the testimony, even if prejudicial enough to warrant an instruction, did not call for a mistrial. Defense counsel cannot opt for a mistrial instead of a curative instruction, as if the two were interchangeable. If defense counsel decides to move for mistrial and altogether eschews the instruction, the trial court cannot be compelled by that decision to go further than it otherwise would." (Internal quotation marks omitted.) *State v. McNellis*, 15 Conn. App. 416, 437–38, 546 A.2d 292, cert. denied, 209 Conn. 809, 548 A.2d 441 (1988).

On the basis of our review of the record, we conclude that Miele's isolated statement did not rise to the level of denying the defendant his right to a fair trial. Accord-

ingly, the court did not abuse its discretion in denying the defendant's motion for a mistrial.

## II

The defendant next claims that the court improperly admitted into evidence testimony from his prior trial. Specifically, he argues that the court abused its discretion by allowing that testimony to be read to the jury. We are not persuaded.

The following additional facts are necessary for the resolution of that issue. On March 28, 2002, after several days of testimony, defense counsel filed a motion in limine to preclude the state from introducing evidence from the defendant's prior trial. The state sought to introduce a letter written by the defendant to Johnson. Although the letter was to be redacted, the state wanted to present to the jury the defendant's statement that if Johnson took responsibility for his crime, then the defendant would take responsibility for what he did. Defense counsel objected, arguing that the letter did not have any probative value and, in any case, the prejudicial impact was too severe. The court, after detailed discussions with counsel, allowed a portion of the defendant's prior testimony to be read to the jury. The following colloquy between the defendant and the prosecutor from the defendant's prior trial on December 13, 2000, was read to the jury:

"[The Prosecutor]: Now, turning your attention to state's [exhibit] forty, the letter that starts, 'Yo, Carl,' the third sentence says: 'Yo, if you take your body, I'll take responsibility for what I did.' Correct?

"[The Defendant]: Correct.

"[The Prosecutor]: You indicated yesterday [December 12, 2000] that that was reference to—that that phrase, 'I'll take responsibility for what I did,' was a

reference to [the Wethersfield incident], an unrelated matter.

"[The Defendant]: Correct.

"[The Prosecutor]: Going on . . . 'When me and [Smith] were talking, made a lot of plans and got our'— that document says—'stories straight' and you indicated that was, again, a reference to an unrelated matter, is that correct?

"[The Defendant]: Correct.

"[The Prosecutor]: Now, the reference . . . 'I'll take responsibility for what I did,' in that sentence where [the letter states] 'me and [Smith] were talking,' we 'made a lot of plans and got our stories straight.' Those two references are references to the Wethersfield incident, isn't that correct?

"[The Defendant]: Correct.

"[The Prosecutor]: And isn't it true, sir, that in the Wethersfield case on Tuesday, October 19, 1999, you, sir, were involved in an incident, which involved a robbery at gunpoint and the theft of a late model Lincoln car, and also [were] involved in the pushing of the gentleman, the owner of the Lincoln, into or an attempt to push the owner of that Lincoln into that vehicle?

"[The Defendant]: I don't remember seeing nothing like that.

"[The Prosecutor]: Pardon me?

"[The Defendant]: I don't remember seeing nothing like that.

"[The Prosecutor]: Were you involved in those situations, sir?

"[The Defendant]: Yes. But I didn't see nobody get pushed into no car.

"[The Prosecutor]: You were involved in a robbery and a larceny.

"[The Defendant]: Correct.

"[The Prosecutor]: The theft of a late model Lincoln.

"[The Defendant]: Correct.

"[The Prosecutor]: At gunpoint.

"[The Defendant]: Correct."

The defendant did not request that the court give a limiting instruction with respect to that testimony. The defendant now claims that the court improperly admitted the evidence.

At the outset, we identify the standard of review and legal principles that guide the resolution of the defendant's claim. "Our standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the [defendant] of substantial prejudice or injustice. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) *State* v. *Hurdle*, 85 Conn. App. 128, 137, 856 A.2d 493, cert. denied, 271 Conn. 942, 861 A.2d 516 (2004).

"[E]vidence may be excluded by the trial court if the court determines that the prejudicial effect of the evidence outweighs its probative value. . . . Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the

defendant but whether it will improperly arouse the emotions of the jury." (Internal quotation marks omitted.) *State* v. *Bennett-Gibson,* 84 Conn. App. 48, 66, 851 A.2d 1214, cert. denied, 271 Conn. 916, 859 A.2d 570 (2004).

In the present case, the court admitted into evidence the defendant's testimony from his prior trial. Such statements are generally admissible as an exception to the rule against hearsay. See *State* v. *Calderon,* 82 Conn. App. 315, 325, 844 A.2d 866, cert. denied, 270 Conn. 905, 853 A.2d 523, cert. denied, 543 U.S. 982 125 S. Ct. 487, 160 L. Ed. 2d 361 (2004); Conn. Code Evid. § 8-3 (1). The defendant argues that the testimony had little probative value and was clearly outweighed by its prejudicial effect. The defendant contends that once the jury heard his prior testimony, it was predisposed to conclude that because he had been involved in a prior violent carjacking, he was guilty of the present charges against him.

We conclude that the court properly weighed the prejudicial impact that the testimony would have on the defendant, along with its probative value. The state argued that the testimony constituted an admission because the defendant acknowledged a fact or circumstance from which guilt may be inferred and, further, that it was offered to rebut the claim that the defendant was a passive or unknowing participant in the criminal activity. The court properly exercised its discretion in determining that the testimony was relevant on the basis of those rationales. We note further that the court minimized any potential prejudice by declining to admit the actual letter and redacting the testimony itself. Finally, the statement, "if you take your body, I'll take responsibility for what I did," does not indicate that the defendant engaged in prior violent activity, particularly when the statement is viewed in context. Instead, it demonstrates that Johnson was responsible for a

"body" while the defendant was involved with what he "did," which does not necessarily mean a violent act. In short, we conclude that the court did not abuse its discretion in admitting the defendant's prior testimony into evidence.

### III

The defendant next claims that the court improperly instructed the jury as to an essential element of larceny. Specifically, he argues that the court failed to define "to appropriate" during its instruction, thereby denying him due process of law. We conclude that any such error was harmless beyond a reasonable doubt.

The following additional facts are necessary for the resolution of that issue. Count fourteen of the information charged the defendant with larceny in the first degree in violation of General Statutes § 53a-122 (a) (3) and alleged in relevant part that the defendant, "with intent to deprive another of property and to appropriate the same to himself and to a third person, did wrongfully take, obtain and withhold such property from an owner and such property was a motor vehicle, the value of which exceeded ten thousand dollars . . . ."

The court instructed the jury that to find the defendant guilty, the state had to prove, beyond a reasonable doubt, that he had committed larceny, as defined in General Statutes § 53a-119, and that the property consisted of a motor vehicle, the value of which exceeded $10,000. The court then defined larceny, stating: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner." The court continued, stating that "[t]o intend to deprive another of property means to intend to withhold or keep it or cause it to be withheld from another permanently, or, for so long a period or under such circumstances that

the major portion of its value is lost to that person." The court proceeded with its instruction without providing the jury with the statutory definition of the term "to appropriate."[10]

The defendant concedes that his claim was not preserved and seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). "In *Golding*, our Supreme Court held that a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. *The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances.* . . . The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review." (Citation omitted; emphasis added; internal quotation marks omitted.) *State* v. *Bangulescu*, 80 Conn. App. 26, 32, 832 A.2d 1187, cert. denied, 267 Conn. 907, 840 A.2d 1171 (2003). We agree with the defendant that the record is adequate for our review and that the claim is of constitutional magnitude. See *State* v. *Morales*, 84 Conn. App. 283, 300–301, 853 A.2d 532, cert. denied, 271 Conn. 928, 859

[10] General Statutes § 53a-118 (a) provides in relevant part: "(4) To 'appropriate' property of another to oneself or a third person means (A) to exercise control over it, or to aid a third person to exercise control over it, permanently or for so extended a period or under such circumstances as to acquire the major portion of its economic value or benefit, or (B) to dispose of the property for the benefit of oneself or a third person. . . ."

A.2d 584 (2004). We conclude, however, that his claim fails under the fourth prong of *Golding*.[11]

"A jury instruction that improperly omits an essential element from the charge constitutes harmless error if a reviewing court concludes beyond a reasonable doubt that the omitted element was *uncontested and supported by overwhelming evidence*, such that the jury verdict would have been the same absent the error . . . ." (Emphasis in original; internal quotation marks omitted.) *State* v. *Kirk R.*, 271 Conn. 499, 517, 857 A.2d 908 (2004); see also *State* v. *Faust*, 237 Conn. 454, 470, 678 A.2d 910 (1996).

In the present case, Smith extensively testified regarding the plan to steal the victim's motor vehicle. Smith stated that Johnson, after seeing the Lincoln, stated that he saw something that he wanted and that the defendant nodded in agreement. Smith watched the defendant and Johnson come out of the building, fight with the victim and then take the victim's motor vehicle. Smith followed in the Honda Accord as the defendant and Johnson drove the victim's vehicle to Johnson's home in East Hartford.

---

[11] We note that in *State* v. *Spillane*, 255 Conn. 746, 756, 770 A.2d 898 (2001), in which the sole basis of the state's case was the defendant's intent to appropriate a motor vehicle, our Supreme Court held that it was improper to omit the statutory definition of "appropriate" from the charge to the jury. In *Spillane*, the information charged the defendant only with the *"intent to appropriate* a motor vehicle . . . ." (Emphasis in original; internal quotation marks omitted.) Id., 751–52. During trial, the state emphasized that it was proceeding solely on that basis, and the court's charge to the jury reflected that specific course. Id., 752. In the present case, however, the state charged the defendant with the intent to deprive and the intent to appropriate.

"Connecticut courts have interpreted the essential elements of larceny as (1) the wrongful taking or carrying away of the personal property of another; (2) the existence of a felonious intent in the taker to deprive the owner of [the property] permanently; and (3) the lack of consent of the owner." (Internal quotation marks omitted.) *State* v. *Flowers*, 69 Conn. App. 57, 69, 797 A.2d 1122, cert. denied, 260 Conn. 929, 798 A.2d 972 (2002). We conclude that, in this case, the court's charge included the essential elements of larceny, but failed to define one of these elements. See id., 68.

The jury also heard testimony that the defendant had admitted to Miele in a written statement that he had been involved in the Wethersfield incident. "In the context of harmless error analysis, our Supreme Court has noted that a confession, if sufficiently corroborated, is the most damaging evidence of guilt . . . ." (Internal quotation marks omitted.) *State* v. *Holliday*, 85 Conn. App. 242, 248, 856 A.2d 1041, cert. denied, 271 Conn. 945, 861 A.2d 1178 (2004). Additionally, a confession that is corroborated generally "will constitute the overwhelming evidence necessary to render harmless any errors at trial." (Internal quotation marks omitted.) *State* v. *Stevenson*, 269 Conn. 563, 596, 849 A.2d 626 (2004). Miele testified that the defendant had stated that he, Johnson and Smith had planned to take a vehicle by force if necessary. After seeing the victim's Lincoln, they decided that it was the vehicle they were going to steal. Miele read a portion of the defendant's written statement to the jury. In his statement, the defendant stated that "[i]t was Carl Johnson, Rashad Smith and me who robbed the guy in Wethersfield and stole his Lincoln sometime last week." The defendant's statement also included a description of what he was wearing "[t]he night we stole the Lincoln . . . ." The defendant's statements indicated that he and Johnson drove the victim's vehicle for a period of time before abandoning it. Finally, we note that the jury heard the defendant's statements from his other trial that he was involved in the theft of the Lincoln in Wethersfield that occurred on October 19, 1999. See part II.

On the basis of the foregoing, including the defendant's confession, combined with the corroboration of Smith's testimony, we conclude that the record establishes beyond a reasonable doubt that the element of larceny that was incompletely defined by the court, namely, "to appropriate," was uncontested and supported by overwhelming evidence. We further conclude that the verdict would have been the same had the

jury been given the definition that was missing. We determine that the court's incomplete jury instruction was harmless beyond a reasonable doubt, as the evidence establishing that the defendant had appropriated the victim's vehicle was overwhelming.

## IV

The defendant's final claim is that the court improperly violated the prohibition against double jeopardy by sentencing him on six counts of conspiracy offenses. Specifically, the defendant argues that the jury convicted him of six conspiracies[12] arising out of a single plan.[13] The defendant further argues that pursuant to

[12] The defendant was convicted of two counts of conspiracy to commit robbery in the first degree, and one count each of conspiracy to commit kidnapping in the first degree with a firearm, conspiracy to commit burglary in the first degree, conspiracy to commit assault in the first degree and conspiracy to commit larceny in the first degree.

[13] We have stated that "[t]o prove the crime of conspiracy, in violation of [General Statutes] § 53a-48, the state must establish beyond a reasonable doubt that an agreement existed between two or more persons to engage in conduct constituting a crime and that subsequent to the agreement one of the conspirators performed an overt act in furtherance of the conspiracy." (Internal quotation marks omitted.) *State* v. *Gonzalez*, 69 Conn. App. 649, 653, 796 A.2d 1225, cert. denied, 260 Conn. 937, 802 A.2d 91 (2002). Furthermore, "[t]o demonstrate the existence of a conspiracy between one or more parties, [t]he existence of a formal agreement between the parties need not be proved. It is sufficient to show that they are knowingly engaged in a mutual plan to do a forbidden act. . . . Because of the secret nature of a conspiracy, a conviction is usually based on circumstantial evidence. . . . The state need not prove that the defendant and a coconspirator shook hands, whispered in each other's ear, signed papers, or used any magic words such as we have an agreement. . . .

"[W]e recognize that conspiracy is a specific intent crime. Intent is divided into two parts: (1) the intent to agree to conspire; and (2) the intent to commit the offense that is the object of the conspiracy. . . . Intent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom. . . . In a conspiracy prosecution, when determining both a defendant's specific intent to agree and his specific intent that the criminal acts be performed, the jury may rely on reasonable inferences from facts in the evidence and may develop a chain of inferences, each link of which may depend for its validity

*State* v. *Howard*, 221 Conn. 447, 604 A.2d 1294 (1992), he can be punished only for the one conspiracy. In both its brief and at oral argument, the state agrees with the defendant's arguments with respect to that issue.

"The double jeopardy clause of the fifth amendment to the United States constitution provides: [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . . The double jeopardy clause is applicable to the states through the due process clause of the fourteenth amendment. . . . Although the Connecticut constitution has no specific double jeopardy provision, we have held that the due process guarantees of article first, § 9, include protection against double jeopardy. . . . We have recognized that the Double Jeopardy Clause consists of several protections: It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense. . . . These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense. . . .

"Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one. . . . The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute . . . . For such a violation, only the single penalty prescribed by the statute can be imposed." (Citation omitted; internal quotation marks

on the validity of the prior link in the chain." (Citations omitted; internal quotation marks omitted.) *State* v. *Oberdick*, 74 Conn. App. 57, 63–64, 810 A.2d 296 (2002). In the present case, the various charges of conspiracy offenses all originated from the agreement to steal the victim's car.

omitted.) *State* v. *Arceniega*, 73 Conn. App. 288, 302, 807 A.2d 1028 (2002), on appeal after remand, 84 Conn. App. 326, 853 A.2d 586, cert. denied, 271 Conn. 926, 859 A.2d 581 (2004); see also *State* v. *Elsey*, 81 Conn. App. 738, 751, 841 A.2d 714, cert. denied, 269 Conn. 901, 852 A.2d 733 (2004).

We agree with the parties that the court improperly sentenced the defendant. The appropriate remedy under these circumstances is to remand the case to the trial court with direction to merge the conviction of the six conspiracy offenses and to vacate the sentences for five of them. See *State* v. *Howard*, supra, 221 Conn. 463; see also *State* v. *Stevenson*, supra, 85 Conn. App. 814–15; *State* v. *Elsey*, supra, 81 Conn. App. 752–53; *State* v. *Reyes*, 81 Conn. App. 612, 620, 841 A.2d 237 (2004); *State* v. *Arceniega*, supra, 73 Conn. App. 302–303; *State* v. *Vasquez*, 66 Conn. App. 118, 127, 783 A.2d 1183, cert. denied, 258 Conn. 941, 786 A.2d 428 (2001).

The judgment is reversed only as to the sentences on the six conspiracy offenses and the case is remanded with direction to merge the conviction on those offenses and to vacate the sentences for five of them. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.